UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

powerlineman.com, LLC, a
COLORADO LIMITED LIABILITY
COMPANY,

         Plaintiff,

    v.

ROBERT J. KACKSON, an
individual, and doing
business as line-man.com,
utilityjobsonline.com,
utilityinnovations.com, and
THE LINEMAN TOOL BIN,

         Defendant.
_____/

NO. CIV. S-07-879 LKK/EFB

O R D E R

      This is a trademark and service mark infringement case involving plaintiff's "powerlineman" mark. Plaintiff and defendant both operate job posting websites for those involved in the utility service industry. Plaintiff alleges that defendant's use of the phrase "power lineman" infringes on the powerlineman trademark. Defendant argues that "power lineman" is a generic, commonly used phrase. Pending before the court is defendant's motion to dismiss. The court resolves the motion on the parties' papers and after oral

1

argument. For the reasons explained below, the motion is granted in part and denied in part.

### I. Background[1]

Plaintiff is a limited liability company that operates the website powerlineman.com. Its website serves as a job posting site for those involved in the utility service industry. Plaintiff registered the term "powerlineman" in 2003 and alleges that it is the exclusive owner of the powerlineman trademark and service mark (collectively, "trademark"). Compl. ¶ 7. Defendant Robert Jackson operates three websites, utlilityjobsonline.com, line-man.com, and utilityinnovations.com, that offer similar services to those provided by plaintiff.

Plaintiff does not allege that defendant has actually used the term "powerlineman" but rather that defendant has used the phrase "power lineman" (i.e., with a space between power and lineman). Compl. ¶ 8. Specifically, plaintiff alleges that defendant displays the phrase "power lineman" prominently on his websites, uses the phrase in job listings, and incorporates it as a search engine "meta-tag," which directs customers away from plaintiff's website and toward defendant's websites.[2] Id. According to plaintiff, defendant's use of the phrase has caused confusion among customers, who are unable to differentiate

---

[1] As alleged in the complaint.

[2] A meta-tag is an indexing tool used by Internet search engines to determine which websites correspond to the search terms provided by a user.

2

between plaintiff's and defendant's websites. Id. Plaintiff asserts it sent cease and desist letters to defendant in 2004 and 2005. Compl. ¶ 9. Defendant refused to discontinue use of the trademark on the grounds that the trademark is unregisterable. Id.

Plaintiff subsequently filed the present complaint, which alleges four causes of action: (1) trademark and service mark infringement, (2) unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (3) unfair competition under California's Unfair Competition Law, Cal. Bus. and Prof. Code § 17200 et seq., and (4) trade libel and libel per se.

## II. Standard

In order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, -- U.S. --, 127 S. Ct. 1955, 1974 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." Id. at 1964-65.

As the Supreme Court observed, Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. Id. at 1965 n.3. Though such assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, only factual allegations can clarify the "grounds" on which that claim rests. Id. "The

pleading must contain something more. . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." <u>Id.</u> at 1965, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d ed. 2004).[3]

On a motion to dismiss, the allegations of the complaint must be accepted as true. <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. <u>See</u> <u>Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963). In general, the complaint is construed favorably to the pleader. <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), <u>overruled on other grounds by</u> Harlow v. Fitzgerald, 457 U.S. 800 (1982). That said, the court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

### III. Analysis

**A. Trademark Infringement**

A trademark is a limited property right in a particular word, phrase, or symbol. <u>The New Kids on the Block v. News Am.</u>

---

[3] The holding in <u>Twombly</u> explicitly abrogates the well established holding in <u>Conley v. Gibson</u> that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); <u>Twombly</u>, 127 S. Ct. at 1968.

4

Publishing, Inc., 971 F.2d 302, 306 (9th Cir. 1992). The Lanham Act, 15 U.S.C. § 1051 et seq., protects marks that are used to identify and distinguish goods or services in commerce. Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1051 (9th Cir. 1999). "A valid, registered trademark entitles the holder to prevent others from using the mark where 'such use is likely to cause confusion, or to cause mistake or deceive.'" Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc., 457 F.3d 1062, 1067 (9th Cir. 2006) (citing 15 U.S.C. § 1114(1)(a)).

In order to prove an infringement claim under the Lanham Act, plaintiffs must identify the mark and show that (1) it is nonfunctional, (2) is either inherently distinctive or has acquired a secondary meaning, and (3) is likely to be confused with defendant's goods or services.[4] Int'l Jensen v. Metrosound U.S.A., 4 F.3d 819, 823 (9th Cir. 1993). "[T]he ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks." New West Corp. v. NYM Co. of Cal., Inc., 595 F.2d 1194, 1201 (9th Cir. 1979).

**1. Generic Term**

Defendant makes two arguments. First, defendant argues that "powerlineman" (or "power lineman") is a generic term, and

---

[4] Defendant argues that plaintiff has not pled sufficient factual detail to support each of these elements, but the complaint need only provide a "short and plain statement of the claim." Fed. R. Civ. P. 8(a); Compl. ¶ 15. Moreover, it is unclear what additional facts could be pled given the nature of the elements (e.g., likelihood of confusion).

5

hence, cannot be registered.[5]  "Generic marks give the general name of the product; they embrace an entire class of products." Kendall-Jackson Winery, 150 F.3d at 1047.  Generic marks are not registerable as trademarks, even when they have acquired secondary meaning.  Id. n.9.  "To allow trademark protection for generic terms, i.e., names which describe the genus of goods being sold . . . would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are."  See Surgicenters of Am. v. Medical Dental Surgeries, 601 F.2d 1011, 1016 (9th Cir. 1979) (internal quotation marks omitted).  Examples of generic marks "include 'Liquid controls' for equipment that dispenses liquid, or 'Multistate Bar Examination' for a bar examination that may be taken across multiple states."  Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 632 (9th Cir. 2005).

"Whether a mark is generic is a question of fact." Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 840 (9th Cir. 2001).  Because powerlineman is a registered trademark, defendant bears the burden of demonstrating that the mark is generic.[6]  Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 928 (9th Cir. 2005) ("[A]

---

[5] "Marks are often classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 (9th Cir. 1998).

[6] That said, "power lineman" (with a space) is not a registered trademark, and it is arguable that the presumption that "powerlineman" is not generic does not extend to "power lineman."

6

1  plaintiff alleging infringement of a federally-registered mark
2  is entitled to a presumption that the mark is not generic.");
3  Vuitton et Fils S.A. v. J. Young Enterprises, Inc., 644 F.2d
4  769, 775-76 (9th Cir. 1981).
5       Defendant maintains that "power lineman" is generally used
6  by both the public and utility service industry to describe
7  those who set up or repair electric wire communication or power
8  lines.  In that respect, defendant argues that "power lineman"
9  is akin to "plumber," "attorney at law," or "medical doctor."
10 Moreover, defendant also maintains that there is no descriptive
11 substitute for those who practice the trade of "power linemen."
12 In support of its assertion, defendant cites to the Webster's
13 Third New International Dictionary definition of "lineman,"
14 which reads "one who sets up or repairs electric wire
15 communication or power lines."  See Surgicenters of Am. v.
16 Medical Dental Surgeries, 601 F.2d 1011, 1017 (9th Cir. 1979)
17 ("While not determinative, dictionary definitions are relevant
18 and often persuasive in determining how a term is understood by
19 the consuming public, the ultimate test of whether a trademark
20 is generic.").
21      Whether "powerlineman" or "power lineman" is understood by
22 the consuming public as the general name of an occupation is a
23 question of fact inappropriate for resolution on a motion to
24 dismiss.  See Stuhlbarg Int'l Sales, 240 F.3d at 840.  Here, the
25 consuming public consists of employers who offer jobs in the
26 relevant industry and the prospective employees who seek them

1  out, and it is their perceptions that will ultimately determine
2  the viability of plaintiff's claims.  At this stage of the
3  proceedings, however, it is hardly implausible that the
4  consuming public finds that "powerlineman" or "power lineman"
5  conveys more meaning than simply the general name of an
6  occupation.  Twombly, 127 S. Ct. at 1974.

7  Even if the court were to take judicial notice of
8  defendant's proffered dictionary definition of "lineman" --
9  which is the only piece of evidence submitted on the issue of
10 whether the term is generic[7] -- it would, at best, show that the
11 word "lineman" was generic, rather than plaintiff's trademark,
12 "powerlineman."  Indeed, this evidence begs the question as to
13 why "lineman" is an inadequate descriptive substitute for the
14 phrase "powerlineman." See Surgicenters of Am., 601 F.2d at 1016
15 (9th Cir. 1979) (generic marks are not protected because "a
16 competitor could not describe his goods as what they are").

17 On the other hand, if defendant is permitted to use the
18 word "lineman" on its website, this also begs the question as to
19 why insertion of the word "power" before "lineman," separated by
20 a space, infringes on the "powerlineman" trademark.  See
21 Brookfield Communications, 174 F.3d at 1066 (finding that use of
22 the phrase "Movie Buff" did not infringe on "MovieBuff"
23 trademark, because "[e]ven though it differs . . . by only a

---

[7] In its reply brief, defendant also cited to cases where the phrase "power lineman" was used by courts.  Even if the court were to permit this untimely "evidence," it would not squarely address the relevant consuming public's perceptions.

single space, that difference is pivotal").[8]  Invariably, however, whether the consuming public would confuse "power lineman" with "powerlineman" -- like whether "powerlineman" is a generic term -- are factual issues that may only be resolved at trial or on summary judgment.

**2. Nominative Fair Use**

Second, defendant argues that the nominative fair use defense bars plaintiff's infringement claim.  "The nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe his own product."[9] Cairns v. Franklin Mint Co., 292 F.3d 1139, 1151 (9th Cir. 2002).  Thus, for example, a car repair shop can advertise that it fixes Volkswagen cars, even though "Volkswagen" is a registered trademark.  See Volkswagenwerk Aktiengesellschaft v. Church, 411 F.2d 350 (9th Cir. 1969).  Similarly, an imitator of brand name perfumes can advertise that its "2d Chance" perfume

---

[8] Defendant accurately notes, however, that in that case, the phrase "movie buff" was in the dictionary, whereas the phrase "power lineman" is not.  That said, because dictionary definitions constitute only one possible source of evidence as to whether a term is generic, defendant may still be able to produce other evidence (e.g., surveys, testimony) that the consuming public perceives "power lineman" as a generic term.

[9] In order to invoke the nominative use defense, (1) the product or service in question must not be readily identifiable without use of the trademark, (2) only so much of the mark or marks may be used as is reasonably necessary to identify the product or service, and (3) the user must do nothing that to suggest sponsorship or endorsement by the trademark holder.  New Kids on the Block v. News Am. Pub., Inc., 971 F.2d 302, 308 (9th Cir. 1992).

9

is indistinguishable from the trademarked "Chanel #5" perfume. Smith v. Chanel, Inc., 402 F.2d 562 (9th Cir. 1968).  In contrast, "the classic fair use analysis is appropriate where a defendant has used the plaintiff's mark only to describe his own product, and not at all to describe the plaintiff's product."[10] Cairns, 292 F.3d at 1151.

Here, based on the facts alleged in the complaint, it appears that the classic fair use analysis, rather than the nominative fair use analysis, is most applicable.  Defendant has not used the phrase "power lineman" to describe plaintiff's website; rather, it appears that defendant has used the phrase in its own service, e.g., in listing a particular "power lineman" job posting.  In any event, analysis of either of these defenses is premature on a motion to dismiss, particularly given their factual nature.  See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 609 (9th Cir. 2005) (fair use analysis involves questions of facts); Playboy Enterprises, Inc. v. Netscape Communications Corp., 354 F.3d 1020, 1029 (9th Cir. 2000) (disputed factual issue of consumer confusion also precludes summary judgment as to fair use).

**B. Unfair Competition under Lanham Act Section 43(a)**

Plaintiff also alleges that defendant has infringed on its trade dress pursuant to Section 43(a) of the Lanham Act.  Trade

---

[10] The classic fair use defense requires that (1) defendant's use of the term is not as a trademark or service mark, (2) defendant uses the term fairly and in good faith, and (3) defendant only uses the term to describe its goods or services. Cairns, 292 F.3d at 1151.

10

dress refers to the "total image of a product and may include features such as size, shape, color, color combinations, texture or graphics." Int'l Jensen, 4 F.3d at 822.  A defendant's use of trade dress that is confusingly similar to that of a competitor's is actionable.  Id.  Here, plaintiff alleges that defendant has mimicked the design of plaintiff's website in conjunction with the content.  Taking plaintiff's allegation as true, this is sufficient to state a trade dress infringement claim.

**C. California's Unfair Competition Law**

Plaintiff has also brought a claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.  The claim consists of essentially two counts: one under the Lanham Act and one under California's Cartwright Act, Cal. Bus. & Prof. Code § 16700 et seq.  With regard to the former, "state common law claims of unfair competition and actions pursuant to the [UCL] are 'substantially congruent' to claims under the Lanham Act." Cleary v. News Corp., 30 F.3d 1255, 1263 (9th Cir. 1994); see also Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1182 (9th Cir. 2003) ("'[The claims] rise and fall together.'").  The court therefore denies the motion to dismiss this count for the reasons explained above.

With regard to the Cartwright Act, an antitrust violation generally requires that the complaint allege (1) the formation and operation of a conspiracy, (2) illegal acts done pursuant to the conspiracy, (3) a purpose to restrain trade, and (4) damages

11

caused by these acts.  G.H.I.I. v. MTS, Inc., 147 Cal. App. 3d 256, 265 (1983).  Here, defendant allegedly invited plaintiff to help create barriers to market entry by competitors.  Compl. ¶ 24.[11]  Although plaintiff has not alleged any damage caused by this would-be conspiracy, plaintiff argues that "conduct that threatens an incipient violation of an antitrust law" is actionable under the UCL.  Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 187 (1999).

Even if true, however, plaintiff has failed to demonstrate an even more basic threshold issue: the presence of standing. The Cartwright Act confers standing on "any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by this chapter, regardless whether such injured person dealt directly or indirectly with the defendant."[12]  Cal. Bus. & Prof. Code § 16750(a).  Although "incipient" antitrust violations may be actionable, the damage that would have ultimately occurred must nevertheless be felt by plaintiff.  Here, plaintiff was allegedly invited to collude with defendant; far from suffering damage, plaintiff would have

---

[11] Defendant allegedly wrote to plaintiff: "It would really suck to be us if we allowed a new site to evolve and compete at the same levels we find ourselves today.  The best way to prevent this is to investigate linking strategies and implement them, thus making us too powerful to contend with for the most popular search engine terms for your average joe - web developer who embarks on an adventure like ours."  Compl. ¶ 24.

[12] The UCL is similar: it confers standing on "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition."  Cal. Bus. & Prof. Code § 17204.

presumably benefitted from agreeing to the conspiracy. Accordingly, the court dismisses the UCL claim insofar as it is predicated upon a violation of the Cartwright Act.

**D. Trade Libel & Libel Per Se**

    **1. Trade Libel**

Trade libel is an intentional disparagement of the quality of another's goods or services, which the publisher should recognize is likely to cause pecuniary damage. Films of Distinction, Inc. v. Allegro Film Productions, Inc., 12 F. Supp. 2d 1068, 1881-82 (C.D. Cal. 1998). "Trade libel is more like unfair competition than true libel." Id. at 1882. In order to state a claim for trade libel, plaintiff must allege the following elements: (1) a publication, (2) which induces others not to deal with plaintiff, and (3) special damages. Id. at 1881. Here, the only actionable statements made by defendant[13] suggest that plaintiff had copied or stolen website content from defendant. See Compl. ¶ 28(d) ("We have a thief among us.., He will be exposed!"); Compl. ¶ 28(e) ("Every single rodeo that we had . . . was copied by, you guessed it, Byron Dunn [who allegedly operates powerlineman.com]. I spent many hours working on this project this year and last, and built the

---

[13] Some of the statements cited by plaintiff as examples of libel are merely statements of opinion, which fall outside the scope of libel. E.g., Compl. ¶ 28(b) (questioning "well being" of operator of plaintiff's site); ¶ 28(f) (calling operator a "snake" and "p.o.s."). See ComputerXpress, Inc. v. Jackson, 93 Cal. App. 4th 993, 1011 (2001) ("opinions will not support a cause of action for trade libel").

13

largest list of rodeos nationwide that nobody has seen before.").

Accordingly, taking plaintiff's allegations as true, defendant has not technically disparaged the quality of plaintiff's product.  To the contrary, defendant extols the quality of plaintiff's website content, because he alleges that he created it.  E.g., Compl. ¶ 28(e) ("I spent many hours working on this project").  Nevertheless, defendant contends that plaintiff used the content without proper attribution.  If plaintiff did not actually use defendant's content -- which, in order to prevail on its trade libel claim, it will need to prove[14] -- defendant's statement could conceivably cause pecuniary damage.  The consuming public might perceive that plaintiff's website produces less original content than defendant's website, and therefore gravitate towards the latter.  Accordingly, the court finds that the trade libel claim has been sufficiently pled.

**2. Libel Per Se**

Libel per se is defined as "libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact."  Cal. Civ.

---

[14] In addition, plaintiff will also need to prove that a reasonable reader would construe the statements (many of which are vague and ambiguous) as referring to plaintiff, and that they convey facts rather than merely opinion.  See ComputerXpress, 93 Cal. App. 4th at 1011-12 (finding that context of statement, such as internet posting board, may lack "'the formality and polish typically found in documents in which a reader would expect to find facts.'")

1  Code § 45a.  "The test is whether a defamatory meaning appears
2  from the language itself without the necessity of explanation or
3  the pleading of extrinsic facts."  <u>Barnes-Hind, Inc. v. Superior</u>
4  <u>Court</u>, 181 Cal. App. 3d 377, 384-85 (1986).  For example,
5  falsely accusing someone of committing a crime constitutes libel
6  per se.  <u>Id.</u>  Unlike other forms of libel, plaintiff need not
7  prove special damages.  <u>Id.</u> at 382.
8      Here, plaintiff alleges that defendant falsely made
9  statements that the operator of plaintiff's website, Byron Dunn,
10 stole content from defendant's website, which clearly imputes
11 "questionable business methods" to the operator.  <u>Barnes-Hind</u>,
12 181 Cal. App. 3d 377 at 385.  Defendant responds that the
13 plaintiff in this action is powerlineman.com, not Byron Dunn.
14 Nevertheless, a reasonable consumer might nevertheless construe
15 that defendant's statement was directed toward the website as
16 much as it was directed toward its operator.  Accordingly, the
17 court finds that the libel per se claim has been adequately
18 pled.

### IV. Conclusion

20     For the reasons explained above, defendant's motion to
21 dismiss is granted in part and denied in part, without leave to
22 amend.
23     IT IS SO ORDERED.
24     DATED:  November 15, 2007.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

15